UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| DAVID COLE, ET AL | CIVIL ACTION NO. 16-cv-0648 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| PSC INDUSTRIAL OUTSOURCING, LP, ET AL | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

PSC Industrial Outsourcing, LP ("PSC") operates a crude oil reclamation and salt water disposal facility in St. Mary Parish near Bayou Teche. There was an oil spill at the facility in March 2016 that, according to a PSC report, leaked about 299 barrels of crude oil, with approximately 198 barrels of it flowing into Bayou Teche. Brian M. Caubarreaux & Associates law firm filed 32 lawsuits, on behalf of 53 St. Mary Parish residents, in state court to seek damages for the alleged pollution of their property. PSC removed all 32 lawsuits on the basis of diversity jurisdiction.

PSC reports that the plaintiffs in the first eight lawsuits named only PSC as the original defendant, but they filed amended petitions to add PSC employee Lawrence Segura as an additional defendant. The plaintiffs in the other 24 lawsuits named both PSC and Mr. Segura as defendants in the initial petitions. There is diversity of citizenship between the plaintiffs (Louisiana citizens) and PSC (a citizen of Delaware and Texas), but Mr. Segura (Louisiana citizen) destroys complete diversity of citizenship.

David and Marie Cole ("Plaintiffs") are the plaintiffs in this civil action. They have filed a Motion to Remand (Doc. 31) on the grounds that there is not complete diversity of citizenship between them and Mr. Segura. PSC filed a memorandum in opposition and argued that Mr. Segura's citizenship should be ignored pursuant to the improper joinder doctrine. Plaintiffs filed a reply memorandum that responded to the improper joinder argument and, for the first time, asserted that PSC had not met its burden of demonstrating that the amount in controversy exceeds $75,000. PSC was allowed to file a sur-reply to address the new issue. For the reasons that follow, it is recommended that the Motion to Remand (Doc. 31) be denied because (1) Mr. Segura was improperly joined and (2) PSC has met its burden with respect to the amount in controversy.

**Improper Joinder**

    **A. PSC's Burden**

Congress has provided a statutory framework for removal of certain cases where there is diversity of citizenship. Those statutes have been interpreted by the courts to require complete diversity; jurisdiction is lacking if any defendant is a citizen of the same state as any plaintiff. That strict requirement would, on its face, permit a plaintiff to name as a defendant any citizen of his home state and defeat removal. To prevent such shams, the "judge-imported concept of fraudulent joinder" has developed. Bobby Jones Garden Apartments, Inc. v. Suleski, 391 F.2d 172, 176 (5th Cir. 1968). The Fifth Circuit has since adopted the term "improper joinder" to describe the doctrine. Smallwood v. Illinois Central R.R. Co., 385 F.3d 568 n. 1 (5th Cir. 2004) (en banc).

There are two ways to establish improper joinder: (1) actual fraud in the pleading of jurisdictional facts or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court. Only the second way is at issue in this case. The test is whether the defendant has demonstrated that there is no reasonable basis for the district court to predict the plaintiff might be able to recover against the in-state defendant. Smallwood, 385 F.3d at 573; Travis v. Irby, 326 F.3d 644, 646-47 (5th Cir. 2003).

### B. Form of Analysis

The "no reasonable basis" contest may take place in two different settings: (1) a Rule 12(b)(6)-type challenge to the pleadings alone or (2) an effort to pierce the pleadings and demonstrate by summary judgment-type evidence that the plaintiff is unable to prove all the facts necessary to prevail. "[A] court *may* choose to use either one of these two analyses, but it *must* use one and only one of them, not neither or both." International Energy Ventures Mgmt., LLC v. United Energy Grp., Ltd., 818 F.3d 193, 207 (5th Cir. 2016). The Rule 12(b)(6)-type challenge, for the reasons set forth below, is the appropriate method to analyze the improper joinder plea in this case.

### C. The Petition and Amended Petition

Plaintiffs' original petition names PSC as the only defendant. Plaintiffs alleged that they owned property along the navigable waters of Bayou Teche. PSC owned and operated a crude oil reclamation and salt water disposal facility in the immediate vicinity of Plaintiffs' property, also on the bank of Bayou Teche. Petition ¶¶ 1-3.

PSC, on March 28, 2016, allowed a significant volume of crude oil or like substance to spill into the navigable waters of Bayou Teche. The spill was caused by the negligence

and fault of PSC. The petition alleges that PSC was at fault for allowing a crude oil storage tank to overflow, failure to monitor the pumping of oil into the storage tank, failure to install and monitor an alarm system that would have detected the spill, failure to assure that lines and valves within a containment levy were closed, failure to adequately train personnel, and other alleged acts of negligence. ¶¶ 4-5. Plaintiffs alleged that, because of the spill, they sustained damages in categories including contamination to property and ground water, contamination to wildlife and plants, and devaluation of property. ¶ 6. The petition prayed for an award of damages in an amount reasonable in the premises. The categories of damages included punitive damages and attorney's fees.

Lawrence Segura was named as a defendant when Plaintiffs filed a First Supplemental and Amending Petition a few days before the case was removed. The two-page pleading started by amending Paragraph 1 to add Segura as a named defendant. The amendment next added to Paragraph 6 of the original petition several more categories of damages. The only other meaningful change effected by the amended petition was to add new Paragraph 8 as follows:

> At all times pertinent herein defendant, Lawrence Segura was in the course and scope of his employment with defendant PSC Industrial Outsourcing LP, and pursuant to the theory of respondeat-superior, said defendant is responsible for all acts of negligence in causing the acts enumerated herein above.

The amended petition does not contain any other allegations directed at Mr. Segura.

### D. Evidence Submitted by the Parties

PSC submits declarations from Lawrence Segura and Calvin Broussard, who is the PSC branch manager at the facility. They each state, under penalty of perjury pursuant to

28 U.S.C. Section 1746, that Mr. Segura was employed as a truck driver/operator for PSC on March 28, 2016. He worked as needed, and he was paid on an hourly basis. Mr. Segura drove trucks, transferred oil to and from various tanks, and performed other tasks as directed by his supervisors. He was not the manager, supervisor, or foreman of the PSC facility. Mr. Segura and Mr. Broussard also state that PSC had not delegated to Mr. Segura responsibility to prevent oil spills or to enforce environmental regulations or company policies.

Mr. Segura states that, on the day of the spill, he was instructed to transfer salvageable crude oil from one above-ground storage tank to a different above-ground tank. He performed the task without incident, shut off the electrical transfer pump, isolated the valves between the two tanks, and left the facility. Segura states that he was not at the facility when the spill occurred, but he learned about it later. To his knowledge, the equipment involved in the spill was functioning satisfactorily prior to that date. He was not aware, at the time he completed his work, of any issues with equipment or that there was otherwise a risk of an oil spill.

Plaintiffs offer competing evidence in the form of an Unauthorized Discharge Written Notification Report that PSC filed with the Louisiana Department of Environmental Quality. That report (Doc. 42, Exhibit 1) includes PSC's description of the events on the day of the spill. The report states that, at approximately 4:00 p.m., "Mr. Lawrence Segura, the Plant Operator, was the last PSC employee to leave" the facility. He noted no issues or abnormal conditions before he departed. At a little after 6:00 p.m., Mr. Terry Segura of PSC received a phone call from the sheriff's office to tell him that a

member of the public had reported seeing unknown product in Bayou Teche and that the suspected source was a release from the PSC facility. Mr. Terry Segura immediately went to the facility and took steps to stop the release. The report elsewhere described Mr. Terry Segura as "Location Manager for PSC," and the official who made notification to state officials, the Coast Guard, and other relevant agencies. PSC represents in its sur-reply that Terry and Lawrence Segura are different people.

### E. Pleadings-Only Review is Appropriate

The parties have said very little in their briefs about the adequacy of Plaintiffs' petition, as amended, to demonstrate a reasonable basis of recovery against Lawrence. Segura under state law. A Rule 12(b)(6)-type analysis is the primary and preferred method of resolving an improper joinder plea. The court does so by "looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." Smallwood, 385 F.3d at 573. "Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." Id. The declarations and report offered by the parties are irrelevant to a Rule 12(b)(6)-type analysis; it would focus solely on the allegations of the petition as amended.

The parties seem to focus their arguments more on the weight or effect of the extra-pleading evidence they submit, but piercing of the pleadings to review such evidence is appropriate only in limited circumstances. Smallwood explains that "there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder." Id. at 573. The district court has discretion to determine the appropriate procedure in a given case, but the

Fifth Circuit stated in Smallwood: "[W]e caution that a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." Id. at 573-74.

The Court gave examples of situations where it would be appropriate to pierce the pleadings. It offered situations in which "the in-state doctor defendant did not treat the plaintiff patient, the in-state pharmacist defendant did not fill a prescription for the plaintiff patient, a party's residence was not as alleged, or any other fact that easily can be disproved if not true." Id. at n. 12.

This is not a case in which an important fact has been alleged but can be easily demonstrated, by discrete and undisputed facts, to be incorrect. The extra-pleading evidence offered here is much broader, concerns the role and duties of Lawrence Segura at PSC, and regards his potential fault in connection with the spill. There is nothing discrete about those points. The debate of the parties in their briefs shows that the precise nature of Mr. Segura's job as an "operator" is less than clear. One side says he is an hourly rate truckdriver, and the other points to that title (used by PSC) to suggest he is a high-ranking manager. This dispute, as well as what personal fault Segura may have in connection with the spill, cannot be quickly resolved by looking to discrete and undisputed facts. Accordingly, a Rule 12(b)(6)-type challenge to the pleadings alone is the method best suited to assess the improper joinder plea.

### F. Rule 12(b)(6) Analysis

Plaintiffs' original petition named PSC as a defendant, alleged that PSC owned and operated the facility, allowed an oil spill, and was at fault for allowing the spill. All the

allegations in the petition were directed specifically at PSC, including the allegation of Paragraph 5 that the spill was "caused by the negligence and fault of the defendant, PSC Industrial Outsourcing LP in the following nonexclusive particulars . . ." Lawrence Segura was not mentioned in the original petition.

The only allegations against Mr. Segura are found in the amended petition. That pleading offers very little. It added Mr. Segura as a defendant, added some new categories of damages sought, alleged that Mr. Segura was in the course and scope of his employment with PSC, and alleged that PSC was liable under the doctrine of respondeat superior "for all acts of negligence in causing the acts enumerated hereinabove."

The petition and amended petition were filed in state court, but the improper joinder review incorporates the federal pleading requirements of Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007) and Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Those decisions require that the petition set forth factual allegations that, when assumed to be true, raise a right to relief above the speculative level and state a claim that is plausible on its face. International Energy Ventures Management, LLC, 818 F.3d at 200-208.

Neither the original nor amended petition alleged any facts to support a claim of negligence or other fault against Lawrence Segura. Mr. Segura is listed as a defendant, but there are simply no factual allegations against him. If one reads only the petition and amended petition, they are left wondering who Lawrence Segura is and what he has to do with this accident. The best that can be determined is that he is an employee of PSC in some capacity. There is not one single allegation that he did or failed to do anything in connection with the oil spill.

The pleadings do not provide any factual allegations that allege a claim for relief against Mr. Segura that could rise above the speculative level and state a claim that is plausible on its face. Mr. Segura was, therefore, improperly joined, and his citizenship may be ignored. The appropriate action when a defendant has been improperly joined is to dismiss all claims against that defendant without prejudice. <u>International Energy Ventures Management, LLC</u>, 818 F.3d at 210.

**Amount in Controversy**

**A. Removing Party's Burden**

Plaintiffs' petition, in accordance with Louisiana law, did not set forth a demand for a specific amount of damages. When state law is such, a defendant's notice of removal may assert the amount in controversy. 28 U.S.C. § 1446(c)(2)(A)(ii). Removal is proper on the basis of an amount in controversy asserted in the notice of removal "if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds" $75,000 exclusive of interest and costs. 28 U.S.C. §§ 1446(c)(2)(B) and 1332(a). The burden is on the removing party to show that removal is proper, and any doubts should be resolved against federal jurisdiction. <u>Vantage Drilling Co. v. Hsin-Chi Su</u>, 741 F.3rd 535, 537 (5th Cir. 2014).

PSC asserted in the notice of removal that the amount in controversy exceeds $75,000. PSC may satisfy its burden on that issue by: (1) demonstrating that it is "facially apparent" that the claims are likely above $75,000, or (2) setting forth the facts in controversy—in the notice of removal or an affidavit—that support a finding of the

requisite amount. Luckett v. Delta Airlines, 171 F.3d 295, 298 (5th Cir. 1999); Simon v. Wal-Mart Stores, Inc., 193 F.3d 848 (5th Cir. 1999).

### B. Relevant Facts

PSC must rely on the "facially apparent" standard because it did not set forth any additional facts in its notice of removal that would be relevant to the amount in controversy. The notice of removal addressed the amount in controversy in Paragraph 7 by noting that Plaintiffs' petition alleged that the Plaintiffs' property was damaged by an oil spill allegedly caused by PSC, noting the categories of damages requested, and pointing out that the petition did not state the amount of damages Plaintiffs seek. The paragraph concluded: "however, in light of the allegations made by plaintiffs, which are specifically denied, Defendant respectfully submits that the $75,000 jurisdictional amount in controversy requirement is satisfied in this case." Doc. 1, ¶ 7.

Plaintiffs alleged in their petition that they "owned property" along Bayou Teche and that PSC allowed "a significant volume of crude oil or like substance" to spill into the bayou and cause "contamination and pollution of adjacent property." Plaintiffs did not describe in any detail the alleged damage to their property, but they did allege that they had "sustained the following among other damages":

1) Punitive and exemplary damages;
2) Contamination to property, groundwater and aquifers;
3) Contamination to wildlife, plants, ground and trees;
4) Devaluation of property;
5) Attorney fees; and,
6) Other damages that will be shown at the trial of this matter.

Plaintiffs later filed an amended petition. It provided no additional facts regarding the nature or acreage of the property at issue or the particular damage it suffered. The amended petition did amend Paragraph 6 of the original petition "to add additional damages as follows":

> 5) Loss of enjoyment of life;
> 6) Physical pain and suffering, including, pulmonary, sinus and allergy injuries;
> 7) Mental and psychological injury;
> 8) Attorney fees, expert fees, cost of remediation and court cost;
> 9) Loss of use of the subject property;
> 10) Loss of peaceful enjoyment, possession and view.

**C. Waiver**

PSC argues that Plaintiffs waived their right to challenge the amount in controversy because they did not raise the issue until their reply memorandum. PSC is correct that "it is improper for the movant to sandbag and raise wholly new issues in a reply memorandum." Weems v. Hodnett, 2011 WL 2731263, *1 (W.D. La. 2011) (Hornsby, M.J.). But the amount in controversy is an element of subject matter jurisdiction, and "a party may neither consent to nor waive federal subject matter jurisdiction." Simon v. Wal-Mart Stores, Inc., 193 F.3d 848, 850 (5th Cir. 1999). The court must examine the basis of jurisdiction sua sponte, even on appeal, and a party may raise a jurisdictional challenge at any time. Id. That is why the court granted PSC leave to file a supplemental memorandum and address the new issue. Docs. 43 and 44. Accordingly, the issue was not waived, and PSC has been afforded a reasonable opportunity to address the issue.

## D. Lack of Article 893 Allegation

PSC points out that Plaintiff did not take advantage of the ability under La. Code Civ. Proc. art. 893 to allege in the petition that the amount of damages is insufficient to establish jurisdiction in the federal courts. The rule provides that the "prayer for relief shall be for such damages as are reasonable in the premises except that if a specific amount of damages is necessary to establish . . . the lack of jurisdiction of federal courts due to insufficiency of damages . . . a general allegation that the claim exceeds or is less than the requisite amount is required." Plaintiffs prayed only for an award of damages in an amount reasonable in the premises.

If parties may not create subject-matter jurisdiction by express agreement or stipulation, which is well settled, then the mere inaction of the plaintiff (though perhaps in contradiction of a state procedural law) cannot give rise to presumptive federal jurisdiction or satisfy the removing defendant's burden. There must be allegations of fact or other evidence in the record to support a determination of whether the amount in controversy requirement is met. Mere silence or inaction by the plaintiff, without facts to suggest the requisite amount in controversy, cannot satisfy the defendant's burden. Lilly v. Big E Drilling Co., 2007 WL 2407254, *2 (W.D. La. 2007) (Hornsby, M.J.). For these and similar reasons, most Louisiana federal courts have stated that a plaintiff's failure to include an Article 893 allegation, alone, is insufficient to establish the amount in controversy. The omission is entitled to "some consideration" in the inquiry. Davis v. LeBlanc, 2017 WL 4399275, *2 (W.D. La. 2017) (Hornsby, M.J.) (collecting cases);

Broussard v. Multi-Chem Group, LLC, 2012 WL 1492855, *2 (W.D. La. 2012) (Hanna, M.J.).

### E. Attorney's Fees and Punitive Damages

Plaintiffs' petition lists categories of damages that include punitive damages and attorney's fees. A claim for attorney's fees is a part of the amount in controversy if the fees are provided for by contract or state law. Foret v. Southern Farm Bureau Life Ins. Co., 918 F.2d 534, 537 (5th Cir. 1990). If fees are available and prayed for, the court may include a reasonable estimate of a fee award when assessing the amount in controversy. Wright Family Investments, LLC v. Jordan Carriers, Inc., 2012 WL 2457664, *4 (W.D. La. 2012).

A claim for punitive damages is also relevant to the amount in controversy. St. Paul Reinsurance Co., Ltd. v. Greenberg, 134 F.3d 1250, 1253 (5th Cir. 1998). The claim is relevant only if punitive damages are recoverable as a matter of state law, and Louisiana has a general public policy against punitive damages or other penalty damages unless expressly authorized by statute. Celestine v. TransWood, Inc., 467 Fed. Appx. 317, 319 (5th Cir. 2012).

Plaintiffs' petition prays for attorney's fees and punitive damages, but neither the pleading nor the briefs of any party identify a basis in Louisiana law for an award of either. The same was true in Celestine. The Fifth Circuit held that a prayer that included claims for punitive damages and attorney's fees did not affect the amount in controversy because there was no showing that either was available under Louisiana law for the claims asserted. PSC has not cited any authority that would support such awards in this case. Accordingly,

the demands for punitive damages and attorney's fees have no effect on the amount in controversy in this civil action.[1]

### F. Facially Apparent

The petition and amended petition allege that Plaintiffs owned "property" along Bayou Teche. There is no indication in the petitions or notice of removal whether the property at issue is a small lot or 1,000 acres of land. There are also no suggestions as to whether the property is developed or undeveloped, residential or commercial. All that is known with certainty is that Plaintiffs owned some property along the bayou.

Plaintiffs allege that PSC allowed a spill of oil, "resulting in the contamination and pollution of adjacent property." Presumably, some of that adjacent property belonged to Plaintiffs because they demand, as a result of the spill, an award of damages in several categories. It has already been established that two of those categories—attorney's fees and punitive damages—are irrelevant. The other categories include contamination to property and groundwater, contamination to wildlife and plants, devaluation of property, cost of remediation, and loss of use of the subject property. Plaintiffs also seek personal injury type damages for loss of enjoyment of life, physical pain and suffering (including pulmonary, sinus, and allergy injuries), as well as mental and psychological injury.

---

[1] Plaintiffs' petition did not invoke the federal Oil Pollution Act or any other federal claim, and PSC did not remove the case based on an assertion of federal question jurisdiction. After removal, however, Plaintiffs agreed to present their claims pursuant to the Oil Pollution Act of 1990 in these related lawsuits. Doc. 16. PSC does not contend that the Act provides for an award of punitive damages or attorney's fees to a private party who presents a claim under the Act.

The undersigned has noted that most personal injury petitions filed in the state include a rather standard list of categories of damages sought, e.g., pain and suffering, medical expenses, loss of income, etc. That mere boilerplate list of categories is not enough by itself to satisfy the amount in controversy requirement. Otherwise, the element would be satisfied in virtually every personal injury suit filed in Louisiana. Contario v. Ball, 2017 WL 3015812, *2 (W.D. La. 2017).

In this case, however, the categories of damages listed differ from those found in the typical car accident or slip and fall petition. Here, we have, in the context of an oil pollution claim, requests for damages for matters such as environmental remediation, loss of use of property, devaluation of property, and contamination of ground water. It would certainly have been helpful had the petition or notice of removal provided a few additional facts about the nature or value of the property and the damages, but even a small parcel of property would be expected to require a significant expense to remediate pollution and remedy other alleged harms—financial, physical, and mental—to the owners. The undersigned concludes that PSC has demonstrated that it is facially apparent from the petition and the amended petition that the amount in controversy exceeds $75,000.[2]

---

[2] Just as it was not too late for Plaintiffs to challenge subject matter jurisdiction, it is not too late for PSC to file an Amended Notice of Removal and attempt to articulate facts that better support its burden with respect to the amount in controversy. 28 U.S.C. § 1653 (1982) ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts.") Relevant facts might include information regarding the size, nature and value of the property at issue, the anticipated cost of remediation, the size of awards or settlements in similar cases, or any pre-removal settlement demands by Plaintiffs. If PSC elects not to do so, and the Fifth Circuit were to disagree with the undersigned's assessment regarding the amount in controversy, this case would be returned to state court even if a decision had been rendered on the merits. See Simon v. Wal-Mart, 193 F.3d at 851-52 (case

## G. Effect of Plaintiffs' Stipulations

Plaintiffs did not place any limit on the amount of damages they prayed for in their state-court pleadings. They first raised the amount in controversy issue in their reply brief in support of their motion to remand. They described the burden on the removing party and stated, "Here, the following plaintiffs stipulate that the amount of damages claimed as a result of the Oil Spill will not—to a legal certainty—exceed $75,000 exclusive of interest and costs." This statement was followed by a list of 28 of the 32 related cases, with this case on the list. The reply brief was signed by counsel but not any plaintiff, and there was no accompanying affidavit or other submission that offered facts to explain the basis for the stipulation. Plaintiffs argue that this warrants remand.

A plaintiff may defeat removal by filing a pre-removal stipulation with his state court petition that affirmatively renounces the right to accept a judgment in excess of $75,000. Police Jury Bossier Parish v. Bluford, 2015 WL 9312017 *3 (W.D. La. 2015). Plaintiffs did not offer their stipulation until long after this case was removed to federal court. Accordingly, that approach is inapplicable.

Post-removal stipulations and affidavits have limited effect. "[I]f it is facially apparent from the petition that the amount in controversy exceeds $75,000 at the time of removal, post-removal affidavits, stipulations, and amendments reducing the amount do not deprive the district court of jurisdiction." Gebbia v. Wal–Mart Stores, Inc., 233 F.3d

---

was remanded after a jury trial because the appellate court decided *sua sponte* that the removing defendant did not meet its burden with respect to the amount in controversy).

880, 883 (5th Cir. 2000). "While post-removal affidavits may be considered in determining the amount in controversy at the time of removal, such affidavits may be considered only if the basis for jurisdiction is ambiguous at the time of removal." Id.; St. Paul Reinsurance Co., Ltd. v. Greenberg, 134 F.3d 1250, 1254 n. 18 (5th Cir. 1998) ("We have considered a post-removal affidavit when the jurisdictional amount was ambiguous on the face of the state petition.").

Plaintiffs did not offer an affidavit or otherwise provide specific facts about the property, pollution, or damages at issue that would clarify any ambiguities in their petition about the amount in controversy. Rather, they offered only a stipulation signed by their attorney that the amount of damages claimed will not exceed $75,000. That conclusory offering provides no facts that would help clarify any ambiguities, and courts have often rejected similar efforts to defeat removal. See, e.g., Thomas v. Rain CII Carbon, LLC, 2018 WL 2149225, *4 (E.D. La. 2018) (Lemelle, J.) (insufficient that plaintiff "certifies that the amount in dispute is $75,000" because it was conclusory and did not clarify any ambiguity); Hinkle v. USAA Gen. Indem. Co., 2017 WL 4411052, *5 (M.D. La. 2017) (Wilder-Doomes, M.J.) (stipulation from counsel that amount in controversy does not exceed $75,000 did not warrant remand); Manshack v. Ocwen Loan Servicing, LLC, 2014 WL 5500456, *4 (W.D. La. 2014) (Hornsby, M.J.) (counsel's post-removal affidavit that the amount in controversy did not meet the jurisdictional amount was of limited effect due to lack of clarifying facts); Costello v. Capital One NA, 2008 WL 1766983, *3 (W.D. La. 2008) (Hornsby, M.J.) (mere post-removal stipulation that damages did not exceed $75,000 was not supported by factual explanation so did not resolve any ambiguity); and Levith v.

State Farm Fire & Cas. Co., 2006 WL 2947906, *3 (E.D. La. 2006) (Vance, J.) (post-removal statement that "the amount in dispute is less than $75,000" did not clarify an initially ambiguous amount in controversy). The stipulation of counsel offered in this case is insufficient to overcome the finding that it is facially apparent from the petition that the amount in controversy exceeded $75,000 at the time of removal.

Accordingly,

It is recommended that Plaintiff's **Motion to Remand (Doc. 31)** be **denied**. It is further recommended that all claims against Lawrence Segura be dismissed without prejudice.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 24th day of October, 2018.

                                                    Mark L. Hornsby
                                                    U.S. Magistrate Judge